The People *ex rel.* John B. Wood, Collector,

*v.*

William Jones *et al.*

*Filed at Springfield March 30, 1891.*

1. Drainage law—*organizing or enlarging districts—remedy to test legality.* The question whether drainage commissioners have exceeded their powers in organizing a drainage district, or in extending the boundaries of such district by annexing additional lands, can not be raised on bill in chancery to enjoin the collection of an assessment, nor on an application for judgment against lands to pay an assessment. The question must be presented by a direct proceeding, as, by *quo warranto.*

2. Same—*bonds of drainage district—of the different modes of issuing them—requirements—limitations.* Under the act of May 22, 1885, relating to drainage districts, two modes of issuing bonds of a district are provided. One requires a petition of a majority of the adult land owners of the district, while the other requires no petition; but when the latter mode is pursued, the issue of bonds is limited not to exceed ninety per cent of the assessment or installment, and the time they are to run is limited not to exceed one year beyond the maturity of the assessment, which is not the case in the first named mode.

Appeal from the County Court of Edgar county; the Hon. Andrew J. Hunter, Judge, presiding.

Mr. James A. Eads, and Messrs. Eckhart & Moore, for the appellant:

If the boundary of the district was not lawfully extended, and the drainage commissioners undertake to exercise powers or franchises over lands not lawfully within the bounds of the district, their right or authority to act as to these lands can be questioned only by *quo warranto. Evans* v. *Lewis,* 121 Ill. 478; *Bodman* v. *Drainage District,* 132 id. 439.

There being a *de facto* corporation, its existence and the authority of its officers can only be questioned by *quo warranto. Blake* v. *People,* 109 Ill. 504; *Trumbo* v. *People,* 75 id. 562;

*Samuels* v. *Drainage Comrs.* 125 id. 539; *Keigwin* v. *Drainage Comrs.* 115 id. 347; *Osborn* v. *People*, 103 id. 224.

The county court had no power, on application for judgment against delinquent lands for special assessments, to hear evidence for the purpose of determining whether the district was properly organized, or whether the outside connecting lands had been legally taken into the district; nor had the court power to hear evidence as to whether said lands were benefited by the ditches of said district.

An individual can not question the right of the corporation to exercise the functions, powers and authority of a drainage district. This can only be done by *quo warranto* in behalf of the State. Dillon on Mun. Corp. sec. 185, p. 268, note 1; *Mullikon* v. *Bloomington*, 72 Ind. 161.

Under the grant of power given to the legislature by the amendment to the constitution, it has full authority to adopt any mode it may see fit to accomplish the drainage of lands; and there is no restriction of this power, but, on the contrary, the legislature is the sole judge of the means and agencies which it will adopt or employ to accomplish the object. *Kilgour* v. *Drainage Comrs.* 111 Ill. 342; *Blake* v. *People*, 109 id. 510.

It has been held that the General Assembly, in exercising its general power under this amendment, is not limited by the boundaries of pre-existing corporations, nor compelled to adopt their corporate authorities. *Owners of Lands* v. *People*, 113 Ill. 304; *Wilson* v. *Trustees*, 133 id. 443.

As to the power of the legislature to create taxing districts without reference to town, county or district lines, see *Wilson* v. *Trustees*, 133 Ill. 443; Cooley on Taxation, (2d ed.) 149; *Bennett* v. *Mayor*, 12 Cal. 84; *County Judge* v. *Railroad Co.* 5 Bush, 225; 4 Comst. 420.

The bonds issued by the commissioners to construct the work are legal and valid, and so is also the assessment to pay interest on these bonds.

Mr. J. B. MANN, Mr. H. S. TANNER, and Mr. H. VAN SELLAR, for the appellees, referred to and commented upon various sections of the Drainage act.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an application, in the county court of Edgar county, for judgment against certain lands, to pay an assessment levied by drainage district No. 1, in Young America township, Edgar county, State of Illinois, to pay interest on certain bonds issued by the district for drainage purposes. A drainage district named as above, composed of certain lands, was organized by the drainage commissioners of Young America township on the 14th day of November, 1879, under the Drainage act approved May 29, 1879. As originally organized, all the lands embraced in the district were situated in Young America township. After the organization of the district the commissioners made several assessments, and located and constructed drains and ditches during the years 1880, 1881, 1882 and 1883. In June, 1885, the commissioners of the district were notified by certain land owners of the district that the ditches which had been constructed were insufficient to drain the lands as originally contemplated, and requested that the ditches might be improved and enlarged. Upon receiving the notice, the commissioners made a personal examination of the ditches, and made a finding, in writing, that the ditches were insufficient in capacity to carry off the water in the district. They also made this further finding: "Whereas, we further find that large areas of land, which are involved in the same system of drainage and require for outlets the drains of the district, have connected with the drains of the district, and that, by such connection, the increased flow of water is emptied into said ditches, which requires an enlargement of said district ditches." They therefore appointed an engineer to examine the lands and ditches, and report in writing. The engineer made an examination and filed a report, which was

adopted and approved.   Afterwards, and on the 31st day of August, 1889, the following proceedings were had:

"STATE OF ILLINOIS,
    *Edgar County.*     } *ss.*
Young America Township. }

"*Whereas,* The statute provides that if individual land owners outside of a drainage district shall connect with the ditches of the district already made, they shall be deemed to have voluntarily applied to be included in the district, and their lands benefited by such drainage shall be treated, classified and taxed like other lands within the district; and whereas, we, the undersigned, commissioners of drainage district No. 1, in Young America Township, Edgar county, and State of Illinois, have ascertained, from an examination of the lands hereinafter described, that the following named individual land owners, who are the owners of the lands set opposite their respective names, which are outside of said district, have connected with the ditches of said district:

"Now, therefore, we, the undersigned commissioners, do hereby order that the following described lands above referred to, the names of whose owners are set opposite them, respectively, be taken in and added to said district, to-wit:"

Here follow two lists of lands, one in Young America township, the other in the adjoining township of Shiloh, which were taken in and added to the district as originally organized in November, 1879.   The lands were afterwards classified. After the confirmation of the classification of the lands of the district, the commissioners, by written resolution, ordered that the sum of $34,350 be raised by special assessments upon the lands of the district as enlarged, and further ordered that the said sum be paid in five equal installments, and that they be due and payable January 1, 1894, 1895, 1896, 1897 and 1898, respectively.   November 16, 1889, the commissioners, by written order, determined and directed that, inasmuch as all of the said installments of said assessments were still un-

paid, and that funds were needed for the construction of the proposed work and the payment of the indebtedness, bonds to the amount of $6000 of each of said installments, being less than ninety per cent of the amount of each of said installments, be issued; that each bond be of the denomination of $500, and that the bonds be numbered from one to sixty, both inclusive; that the first twelve bonds, amounting to $6000, be due and payable August 1, 1894, being less than one year after the installment on account of which the money is borrowed falls due; that the next twelve bonds ($6000) be due and payable August 1, 1895, being less than one year after the second installment on account of which the money is borrowed falls due; and so on, issuing in bonds less than ninety per cent of each installment on account of which the money is borrowed, and making them due less than one year after the respective installments fall due; bonds to bear interest at the rate of six per cent per annum, payable annually. The bonds were issued and sold. On the 21st day of February, 1890, the commissioners, by written resolution, ordered that the sum of $1200 (the amount required to pay interest on the bonds to August 1, 1890,) be levied, and the amount be apportioned among the several tracts of land according to classification. This was the levy for which application was made for judgment against the lands. Several land owners appeared in the county court and resisted judgment.

The court, on a hearing of the application, held that the commissioners had no power to annex lands outside of Young America township to drainage district No. 1, and refused to render judgment against the lands in Shiloh township which had been annexed to the district. As to the lands in Young America township which had been annexed to the district, the court allowed the owners to introduce evidence to prove that they had not connected with the drains of said district, and that the drainage was no benefit to them, and after hearing the evidence, refused judgment against all lands lying in

Young America township which had been annexed to the district by the order of the commissioners, bearing date August 31, 1889.

As will be observed, no question has been raised as to the legality of the organization of district No. 1, as originally organized in 1879; but as to the enlargement of the district under the order of the commissioners of August 31, 1889, under which additional territory was annexed, it is claimed that the action of the commissioners was unauthorized, and hence no power existed to collect an assessment upon the lands annexed. But the first question to be determined is, whether the legality or illegality of the action of the commissioners can be inquired into in a proceeding of this character.

Section 42 of the Drainage act of 1885, which was in force at the time the boundaries of the district were enlarged, provides: "The owners of land outside of the drainage district * * * may connect with ditches of the district already made, by payment, etc. * * * If individual land owners outside of the district have or shall so connect, they shall be deemed to have voluntarily applied to be included in the district, and their lands benefited by such drainage shall be treated, classified and taxed like other lands within the district." Laws of 1885, p. 91.

The commissioners having ascertained that appellees, land owners outside of the district, had connected with the ditches of the district, adopted a resolution, in accordance with the section of the statute, annexing the lands of such owners to the district. The legality of the action of the commissioners is attempted to be called in question on this application for judgment against the lands by the county collector. This can not be done. This court has held, in a number of cases, that in a proceeding to collect a special assessment levied by a drainage district, the organization of the district can not be questioned collaterally, but it can only be done in a direct proceeding. (*Osborn* v. *The People,* 103 Ill. 228; *Evans* v.

*Lewis*, 121 id. 478; *Bodman* v. *Drainage District*, 132 id. 439.) In *Evans* v. *Lewis*, which was a bill in equity to enjoin the collection of a special assessment on the ground that the action of the commissioners in enlarging the boundaries of the district was illegal, it was said: "If the boundaries of the district were not lawfully extended, and the drainage commissioners undertake to exercise powers or franchises over or upon lands not lawfully within the bounds of the district, their right or authority to act as to these lands may be called in question by *quo warranto*, but a bill to enjoin the collection of the assessment is not the proper remedy." In the *Bodman case*, which was also a bill to enjoin the commissioners of a drainage district from acting over certain lands which had been annexed to the district by the commissioners in the same way as was done here, on the ground that the action of the commissioners was illegal, it is said: "Nor do we think it is of any importance that the bill does not attack the validity of the organization of the drainage district, but the territorial extent of it, only. * * * The question to be determined, in any view, is purely a legal question. * * * The remedy should have been by *quo warranto* against the commissioners. Whether the commissioners had exceeded their powers in organizing the district, or in extending the boundaries of the district by annexing additional territory, is a question which can not be raised on bill in chancery to enjoin the collection of an assessment, nor on an application for judgment against lands to pay an assessment. The remedy is in a direct proceeding."

One other question remains to be considered. The assessment in question was levied to pay interest on bonds issued by the drainage district, and it is insisted the bonds were unlawfully issued, and hence no assessment can be levied or collected to pay the interest or principal of the bonds. It was admitted on the hearing, that the assessment for which judgment was asked was levied for the purpose of raising $1200

to pay interest on the bonds issued by order of the drainage commissioners, dated November 16, 1889, and that the alleged power to issue such bonds is found in section 5 of the act of May 22, 1885, (Sess. Laws, 76,) and that no petition asking for the issue of said bonds was ever presented to any one, as required by section 1 of said act. If the bonds in question were not authorized to be issued by the act of May 22, 1885, except upon petition signed by a majority of adult land owners of the district, then they were issued without authority of law, as no petition was presented for that purpose. Upon an examination of the act, however, we are not inclined to give it the construction placed upon it by appellees. Under the act we are inclined to think two modes of issuing bonds are provided for,—one by petition, as provided for by sections 1, 2 and 3 of the act, and another by section 5. Under section 5 no petition is required, but the commissioners act on their own motion. When action is taken under section 1, bonds may be issued to the full amount of the assessment or any installment of the assessment. No limitation is placed on the time the bonds shall run, nor is the rate of interest limited. On the other hand, when action is taken under section 5, the commissioners are limited to issue not to exceed ninety per cent, and the time the bonds shall run is limited not to exceed one year beyond the maturity of the assessment, and the rate of interest is limited to six per cent. These different provisions seem to indicate that the legislature intended to provide two distinct modes of procedure,—one by petition, under sections 1, 2, 3 and 4, and the other under section 5, without petition.

From what has been said, it follows that the judgment of the county court is erroneous. It will be reversed, and the cause remanded for further proceedings consistent with this opinion.

*Judgment reversed.*